**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| PAUL HAYES,<br><br>        Plaintiff,<br><br>v.<br><br>AUSTIN BERTHELOT, LLOYD ROBINSON, ST. JAMES PARISH, RICKY BABIN, and TYLER CAVALIER, as Custodians of Records for the 23rd Judicial District Attorney, and JOHN DOES 1-3,<br><br>        Defendants. | Case No. |

**<u>AMENDED COMPLAINT</u>**

The story of how Paul Hayes's arm was snapped in half (and permanently damaged) by Deputy Austin Berthelot on June 4, 2023 actually begins three years earlier when a bogus misdemeanor warrant for his arrest was issued. It involves various forms of misconduct by two different police officers (Robinson and Berthelot), and the complete failure of St. James Parish to meaningfully discipline an officer (Berthelot) with a track record of illegal activity. Fortunately, Mr. Hayes was acquitted of all criminal allegations brought against him, notwithstanding the failure of the 23rd Judicial District Attorney's Office to disclose *Brady* information and to preserve relevant public records (which, in this case, were unlawfully destroyed immediately after Mr. Hayes requested them). This lawsuit asserts several claims brought under the U.S. Constitution and state law against those responsible for violating Mr. Hayes's rights during this ordeal.

1

**JURISDICTION AND VENUE**

1. Plaintiff's claims arise under the laws of the United States and Louisiana. This court has jurisdiction over Plaintiff's claims of federal rights violations, which are brought pursuant to 42 U.S.C. §§ 1983 and 1988. This court has jurisdiction subject to 28 U.S.C. §§ 1331 and 1343. The court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**PARTIES**

2. Plaintiff PAUL HAYES is, and was at all relevant times, a resident of Louisiana.

3. Defendant AUSTIN BERTHELOT is a resident of Louisiana and, at all relevant times, a deputy employed by ST. JAMES PARISH.

4. Defendant ST. JAMES PARISH is a political subdivision of the State of Louisiana. The St. James Parish Sheriff's Office is a law enforcement agency for the Parish. At all relevant times, by and through the Sheriff's Office, the Parish employed, supervised, trained, and directed the policies and procedures pertinent to Defendant Berthelot's acts and omissions alleged herein.[1]

5. Defendant LLOYD ROBINSON is a resident of Louisiana and was, at all relevant times, a police officer with the Lutcher Police Department.

6. Defendants RICKY BABIN and TYLER CAVALIER are the custodians of records for the 23rd Judicial District Attorney's Office in Donaldsonville, Louisiana. Their responsibilities (and liability to suit) are set forth in La. R.S. 44:1 *et seq.*

---

[1] Plaintiff's initial Complaint named the "St. James Parish Sheriff's Office" as the governmental entity responsible for Defendant Berthelot's training and supervision, in addition to the policies and procedures of the St. James Parish Sheriff's Office. Plaintiff files this Amended Complaint to name Defendant St. James Parish as the proper governmental entity for his municipal liability allegations.

7. Defendants JOHN DOES 1-3 are individuals whose identities are presently unknown to plaintiff, believed to be employees of the 23rd Judicial District Attorney's Office (or acting at the Office's direction), who unlawfully destroyed public records relevant to Paul Hayes's aborted criminal prosecution.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

**I.    A Bogus Warrant**

8. On July 11, 2020, Lutcher Police Department Officer Lloyd Robinson was sitting in his police car outside a donut shop in Gramercy, Louisiana.

9. Officer Robinson and Paul Hayes, who was in the passenger seat of a passing vehicle, exchanged words.

10. Paul Hayes did not threaten or assault Officer Robinson.

11. Later that afternoon, Officer Robinson went before a justice of the peace and falsely swore out an arrest warrant accusing Mr. Hayes of misdemeanor assault. He falsely accused Mr. Hayes of threatening to "beat [his] a—and f--- [him] up [him] and the town mayor." He further falsely stated that Mr. Hayes said to him: "Imma [sic] fuck you up and kevin and the mayor over my cars." Based on his false statements, an arrest warrant was issued for misdemeanor assault in violation of La. R.S. 14:38 (simple assault).

12. Unbeknownst to Mr. Hayes, this arrest warrant for Mr. Hayes remained active for years.

**II.    A Bogus "Traffic Violation"**

13. On June 4, 2023, SJPSO Deputy Austin Berthelot initiated a traffic stop on a vehicle driven by Mr. Hayes.

14. The purported basis for the stop was that Mr. Hayes unlawfully violating La. R.S. 32:175, which requires motorists to yield when crossing railroad tracks.

15. Mr. Hayes did not violate La. R.S. 32:175, nor did he engage in conduct that would make an officer reasonably suspect that he had committed a traffic violation.

16. Mr. Hayes promptly stopped when ordered and followed Deputy Berthelot's instructions.

**III.    Deputy Berthelot Needlessly Breaks Mr. Hayes's Arm**

17. Mr. Hayes was polite with Deputy Berthelot and exited the vehicle as ordered.

18. Deputy Berthelot returned to his vehicle where he learned that Mr. Hayes had a misdemeanor warrant for his arrest outstanding.

19. Deputy Berthelot ordered Mr. Hayes to turn around and face the vehicle, without explaining why he was making such a demand (or what basis he had for seeking to arrest Mr. Hayes).

20. Mr. Hayes asked for clarification, seeking to understand what Deputy Berthelot was doing and why. His tone was polite and his inquiry was brief.

21. Rather than answer Mr. Hayes's reasonable inquiry, Deputy Berthelot radically escalated the situation by placing Mr. Hayes in what he later described as an "arm bar."

22. Deputy Berthelot then applied sufficient force to Mr. Hayes's arm that he broke his bones.

23. Louisiana Code of Criminal Procedure art. 217 requires "[a] peace officer, when making an arrest by virtue of a warrant, [to] inform the person to be arrested of his authority and of the fact that a warrant has been issued for his arrest, unless he flees

4

or forcibly resists before the officer has an opportunity to inform him, or unless the giving of such information would imperil the arrest." Deputy Berthelot did not inform Mr. Hayes of his authority or the fact that a warrant had been issued for his arrest before breaking his arm; and Mr. Hayes did not flee or forcible resist before Deputy Berthelot had the opportunity to do so. Nor would telling Mr. Hayes that there was an outstanding warrant have imperiled the arrest.

24. At no time did Mr. Hayes act aggressively toward Deputy Berthelot or physically resist.

25. As Deputy Berthelot later explained, "I thought it was going to be a bigger fight . . . so I put him in that arm bar. [Snickers]. And he said, 'no!' [Laughter]."

26. Deputy Berthelot did not accuse or charge Mr. Hayes with resisting arrest.

27. The "warrant" that was outstanding for Mr. Hayes specifically provided that he should be released on his own recognizance (without having to post any bond). Yet Deputy Hayes still decided to effectuate a full custodial arrest instead of issue a summons.

28.  The misdemeanor warrant was also issued more than three years earlier. Under Louisiana law, misdemeanors generally must be prosecuted within two years of the date of the offense.

**IV.   The Assault Charges Are Rejected (but Prosecutors Destroy the Records)**

29. The District Attorney elected not to prosecute Mr. Hayes regarding the bogus allegation that he "assaulted" Officer Robinson on June 23, 2023 (about a week after the arrest).

30. The precise reasons for this decision remain unclear, however, because the District Attorney's Office destroyed the relevant files.

31. On November 27, 2023, Mr. Hayes (through undersigned counsel) formally requested all records related to two separate matters: (1) the recent unsuccessful prosecution for the criminal traffic offense, and (2) "all records related to Mr. Hayes's arrest on a warrant for misdemeanor assault . . . . The District Attorney opted *not* to file a bill of information related to that assault case."

32. On December 5, 2023, the District Attorney's Office (through Defendant Cavalier) acknowledge receipt of the request.

33. At some point between December 27, 2023 and December 29, 2023, the file related to the bogus assault allegation was destroyed.

34. On February 1, 2024, the District Attorney's office finally responded to the public records request, but conspicuously omitted any records related to the assault case.

35. Counsel for Mr. Hayes immediately responded, reiterating the request for the assault files (which the District Attorney had the day before admitted, orally, had been destroyed).

36. Defendant Cavalier's communications regarding the destruction of the records, and his lack of certainty regarding the precise dates of destruction, indicate that other individuals (JOHN DOES 1-3) were responsible for the acts. On information and belief, these individuals' identity is known to Defendant Cavalier or others working under his direction.

37. In subsequent communication, the District Attorney's Office claimed that this destruction of records was done "pursuant to policy" and in accordance with a Public Retention Policy that was previously approved by the Louisiana Secretary of State.

38. In fact, the Public Retention Policy plainly and unambiguously provides that the records related to Mr. Hayes's assault case should have been retained until at least January 1, 2025.

39. When counsel pointed out to the District Attorney's Office that the record retention policy did not authorize the destruction of the records, all communication ceased.

## IV.   Mr. Hayes is Acquitted of the Traffic Offense (Despite False Testimony from Berthelot)

40. On November 20, 2023, Paul Hayes was put on trial for an alleged violation of La. R.S. 32:175.

41. He faced the possibility of 30 days' imprisonment if convicted.

42. Before trial, prosecutors offered Mr. Hayes a plea offer of 30 days in jail, suspended, and $225.50 in court costs.

43. Mr. Hayes rejected the offer.

44. In a La. R.S. 32:175, the critical question is often whether the motorist adequately slows down before crossing the railroad tracks. *See* La. R.S. 32:175 ("The driver . . . shall slow down to a speed reasonable for the existing conditions").

45. The State's only evidence at trial was the testimony of Deputy Berthelot. On direct examination, he testified as follows:

> Q:   Did you observe that white pickup truck [driven by Mr. Hayes] slow down or stop prior to crossing that rail crossing?
>
> A:   No, sir.

46. This testimony was false.

47. In previous sworn testimony, Deputy Berthelot testified as follows:

> Q:    What was transpiring that caused you to stop him?
>
> A:    . . . [A] pickup truck, I think it was [a] white pickup truck, Ford diesel came to the tracks, slowed down, went over the tracks . . . So based on that, he had plenty of time to stop beforehand."

48. Troubled by Deputy Berthelot's inconsistent testimony, the trial court found Mr. Hayes "not guilty."

## V.    Deputy Berthelot's Troubled History with SJPSO

49. By the time of his interactions with Mr. Hayes, Deputy Berthelot's history of on-the-job and off-the-job criminality was well known to SJPSO.

50. In February 2021, Deputy Berthelot's supervisors found that he violated various criminal laws (specifically, that he committed criminal trespass in violation of 14:63 and violated criminal traffic laws). The department specifically flagged that there would be a "public perception" of hypocrisy if Deputy Berthelot and his colleague enforced similar laws while "violating the laws themselves." But Deputy Berthelot was not arrested or charged with a criminal offense, or even suspended from his work; he received no meaningful discipline whatsoever.

51. In June 2021, Deputy Berthelot was found to have falsely accused an arrestee of a felony drug charge, when, in fact, there was "no basis" in law to file such a charge. (He also failed to complete a post-arrest affidavit until long after the offense, "far beyond the 48 hour window that is legally required to be completed in.") Again, he received no meaningful discipline.

52. Deputy Berthelot regularly disregarded the law on other previous occasions, too, in ways that are not reflected in his Internal Affairs file. Curiously, a letter regarding the June 2021 misconduct in Deputy Berthelot's file indicates that this was *already* a recurring problem for him—"Dty. Berthelot has been advised in the past to read the laws and make sure that it properly applies to the case prior to charging an offender"—but no record of these conversations has been disclosed.

53. In April 2023, Deputy Berthelot was found to have engaged in gross misconduct lying about a traffic stop of a black male in nearly the exact same place where Mr. Hayes was arrested. He was found to have lied that the motorist engaged in "flight from an officer" and vindictively charged him with the offense. Specifically, SJPSO found: "Based on a review of the footage, Deputy Berthelot's account appears to be dishonest in nature . . . Furthermore, Deputy Berthelot taking away the original citation to add a the [sic] flight charge, seemingly due to his disagreement with Mr. Morris's answer appears vindictive." SJPSO found that he acted "unprofessionally" throughout the encounter with the black male motorist. Yet again, no discipline was initially imposed (at least not until August, after Mr. Hayes filed *his* internal affairs complaint in July 2023). Despite the fact that falsifying a police report is a criminal offense, the only penalty Deputy Berthelot ended up receiving was a single day's suspension from work to be served in September 2023.

54. The week before he was supposed to serve that single-day suspension in September 2023, Deputy Berthelot engaged in still more unprofessional (and, in fact, criminal) conduct. Specifically, presumably to entertain his thousands of followers on the social media platform TikTok, Deputy Berthelot "traveling on the shoulder of the roadway"

9

documenting "miniature motorcycles . . . performing wheelies and conducting other reckless acts while on public roadways." Again, no criminal charges were filed. Curiously, SJPSO supervisors reviewed Deputy Berthelot's TikTok account and asked him to remove some content, but apparently took no issue with a video depicting a video celebrating police attacking Black Lives Matter protesters accompanied by the hashtags: "#backtheblue #timesup #nomoregames #antifa #blm #foryou #blueline", or a video featuring Deputy Berthelot's Confederate Flag ATV.

55. Approximately 48 hours after returning from his suspension, Deputy Berthelot returned to engaging in dangerous (and criminal) conduct while in uniform. According to the investigation file, Deputy Berthelot ignored a direct order on September 16, 2023 to abandon a dangerous high-speed pursuit where vehicles were traveling in excess of 120 mph. Instead of abandoning the pursuit as ordered, Berthelot "continued to pursue both vehicles without flashing lights at excessive speeds over 120 MPH for one minute and 40 seconds after acknowledging [the] order to terminate [the pursuit]." Deputy Berthelot went through a major intersection "while traveling in excess of 100 MPH though no longer in pursuit" and "continued to travel speeds over 100 MPH). It is unclear what punishment, if any, was imposed for this dangerous and illegal conduct.

## VI.    The Parish Ratifies Deputy Berthelot's Conduct with Respect to Mr. Hayes

56. In July 2023, Mr. Hayes filed a formal complaint with Sheriff Willy J. Martin, Jr., the Sheriff of St. James Parish, regarding the conduct of Deputy Berthelot. Specifically the complaint alleged the Deputy Berthelot "stopped Mr. Hayes without probable cause, refused to inform him why he was being placed under arrest, and used

10

excessive force when arresting him." The complaint, as subsequently amended, also argued that his arrest by Deputy Berthelot was unreasonable because the warrant itself dictated that he should be released on his own recognizance without posting money bail (thus negating any purpose for a custodial arrest that would not equally be served by the issuance of a summons).

57. Sheriff Martin was personally aware of the complaint and discussed it with his Chief of Operations, Major Juliette Scioneaux.

58. The investigation cleared Deputy Berthelot of any wrongdoing related to an improper stop of Mr. Hayes, an improper arrest, or excessive force.

59. Contrary to Louisiana law, SJPSO's policy did not require deputies to advise those arrested on warrants to be told that they were being arrested because of an outstanding warrant. That policy was subsequently modified, but Deputy Berthelot was cleared because he was acting pursuant to existing policy.

60. The complaint was updated when Deputy Berthelot provided false sworn testimony in court against Mr. Hayes.

61. SJPSO cleared Deputy Berthelot of any wrongdoing related to that complaint as well, apparently because an Assistant District Attorney said that it was not immediately clear to him that Deputy Berthelot's false testimony met the legal standard for a criminal perjury charge.

## VII.    The Aftermath

62. When Deputy Berthelot snapped Mr. Hayes's arm, he inflicted a right elbow coronoid fracture with ulnar collateral sprain.

63. He has been in constant pain ever since.

11

64. He has been forced to take a lower paying job because he is no longer physically able to continue in his previous role and he expects to be permanently disabled.

65. In the past year, he has diligently attended well over fifty (5) doctor's appointments and therapy sessions since, and has incurred thousands of dollars in medical expenses.

## CAUSES OF ACTION

### Counts I (federal) and II (state) - Malicious Prosecution – Lloyd Robinson

66. By the aforementioned conduct—including the fabrication of a false assault claim and obtaining a warrant for plaintiff's arrest based on that false information—Officer Robinson engaged in both the (federal) constitutional tort and Louisiana tort of malicious prosecution, which share the same elements.

   a. By obtaining the warrant, Officer Robinson commenced a criminal proceeding against plaintiff.

   b. Defendant Robinson was the person who legal caused the aforementioned harm.

   c. The 23rd Judicial District Attorney's Office screened the case and "refused" it, representing a bona fide termination in favor of Mr. Hayes.

   d. There was no probable cause for this proceeding and Mr. Hayes was in fact innocent.

   e. Officer Robinson acted with malice.

   f. Mr. Hayes was damaged as a result of this conduct, including by and through his subsequent arrest based on the warrant.

### Counts III (federal) and IV (state) - Malicious Prosecution – Austin Berthelot

12

67. By the aforementioned conduct—including the fabrication of a false account of a traffic violation and by providing false in-court testimony against Mr. Hayes—Deputy Berthelot engaged in both the (federal) constitutional tort and Louisiana tort of malicious prosecution, which share the same elements.

    a. By fabricating a false account of a traffic violation and by providing false in-court testimony against Mr. Hayes, Officer Robinson commenced and continued a criminal proceeding against plaintiff.

    b. Defendant Berthelot was the person who legal caused the aforementioned harm.

    c. Mr. Hayes was acquitted at trial, which represents a bona fide resolution in his favor.

    d. There was no probable cause for this proceeding and Mr. Hayes was in fact innocent.

    e. Deputy Berthelot acted with malice.

    f. Mr. Hayes was damaged as a result of this conduct, including having to endure the ordeal of trial and face the risk of jail time if he were to have been convicted.

**Counts V (federal) – Unreasonable Seizure – Austin Berthelot**

68. Deputy Berthelot's initial stop of Mr. Hayes was an unlawful seizure prohibited by the Fourth Amendment because it was unreasonable and not supported by reasonable suspicion.

69. Deputy Berthelot lacked reasonable suspicion to believe Mr. Hayes had committed a crime.

70. Mr. Hayes was damaged by that seizure, including by having his liberty restrained, and suffered emotional harms including stress and anxiety.

### Counts VI (federal) – Excessive Force – Austin Berthelot

71. Deputy Berthelot's arrest of Mr. Hayes violated his constitutional right to be free from excessive force during an arrest.

72. He was injured both physically and mentally, including an arm that is permanently damaged.

73. This injury resulted directly from Deputy Berthelot's excessive use of force.

74. The force that Deputy Berthelot used to effectuate the arrest was objective unreasonable, as assessed from the vantage of a reasonable officer under the circumstances.

### Counts VII (state) – Unlawful Method of Arrest Pursuant to Warrant – Austin Berthelot

75. Louisiana law provides that every act whatever that causes damage to another obliges him by whose fault it happened to repair it. La. C. C. art. 2315.

76. Louisiana law places strict legal requirements on the conduct of law enforcement officers effectuating arrests pursuant to warrants in both La. Const. art. I, § 13 (requiring detainees "be advised fully for the reason for his arrest or detention") and La. Code Crim. Proc. art. 217, which requires "[a] peace officer, when making an arrest by virtue of a warrant, [to] inform the person to be arrested of his authority and of the fact that a warrant has been issued for his arrest, unless he flees or forcibly resists before the officer has an opportunity to inform him, or unless the giving of such information would imperil the arrest."

14

77. Deputy Berthelot did not inform Mr. Hayes of his authority or the fact that a warrant had been issued for his arrest before breaking his arm; and Mr. Hayes did not flee or forcible resist before Deputy Berthelot had the opportunity to do so. Nor would telling Mr. Hayes that there was an outstanding warrant have imperiled the arrest.

78. Mr. Hayes suffered significant damage as a result of Deputy Berthelot's failure to follow Louisiana law when arresting him.

**COUNTS VIII, IX, X – *Monell* Liability for Counts III, V, VI – St. James Parish**

79. The wrongdoing described above by Defendant Berthelot was committed pursuant to the official policies and customs of the defendant St. James Parish, by and though the St. James Parish Sheriff's Office.

80. The wrongdoing described above by Defendant Berthelot was brought to the attention of the final policymaker the Parish and "ratified"; in every regard, Defendant Berthelot was found to have acted consistent with Parish policy (including with respect to his false testimony, his excessive use of force, and his decision to stop Mr. Hayes).

81. Moreover, Mr. Hayes alleges that the Parish was deliberately indifferent to the likelihood of further constitutional violations being committed based on the Parish's failure-to-train and failure-to-discipline Deputy Berthelot despite repeated on-the-job violations of the law (including falsification of police reports regarding alleged traffic violations).

82. These policies and customs were the moving forces leading to the constitutional violations.

**COUNTS XI – Destruction of Public Records – Ricky Babin, Tyler Cavalier, and John Does 1-3**

15

83. The Louisiana Public Records Act, La. R.S. 44:1 *et seq.*, provides a right of action for those who were denied a right to inspect or copy a public record. *See* La. R.S. 44:35.

84. Those who have been "denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record" may sue for declaratory relief and recover attorney fees, costs and damages as provided for by this Section."

85. These damages may include civil penalties "not to exceed one hundred dollars per day, exclusive of Saturdays, Sunday, and legal public holidays for each such day of such failure to give notification."

86. Mr. Hayes has been denied the right to inspect and copy public records that he sought related to his assault case by Defendants Babin, Cavalier, and Does 1-3. He alleges that the records have been intentionally destroyed weeks after he requested the records (and Defendant Cavalier acknowledged receipt of the request), and that the destruction of the records was arbitrary and capricious (if not worse).

87. He has suffered damages from this, including harm in seeking redress against the other named defendants in this case. He seeks declaratory relief, damages (including statutory damages), attorney's fees, and other costs of litigation.

## JURY TRIAL DEMAND

88. Plaintiff requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor and against Defendants all defendants. Plaintiff prays for the awarding of declaratory relief and compensatory damages, statutory damages for the PRA violation, costs and attorneys' fees

16

against all Defendants, and punitive damages against Defendants Robinson and Berthelot; and

for such further and additional relief as this Court may deem appropriate and just.

Respectfully submitted,

/s/ Thomas Frampton

**Thomas Frampton, LA Bar # 35775**
580 Massie Road
Charlottesville, VA 22903
T: (202) 352-8341
E: tframpton@law.virginia.edu

**COUNSEL FOR PAUL HAYES**