UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PAUL HAYES                                              CIVIL ACTION

VERSUS                                                  NO. 24-1434

AUSTIN BERTHELOT, *et al.*                              SECTION M (5)

**ORDER & REASONS**

Before the Court is a motion to dismiss filed by defendants Sheriff Claude Louis, Jr., in his official capacity, and Austin Berthelot, seeking dismissal of all claims brought against Sheriff Louis (counts VIII, IX, and X) and the state-law claim of "unlawful method of arrest pursuant to warrant" brought against Berthelot (count VII).[1]  Plaintiff Paul Hayes responds in opposition,[2] and Sheriff Louis and Berthelot reply in further support of their motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion.

**I.    BACKGROUND**

This case involves constitutional and state-law claims arising out of an arrest.  Hayes alleges that on July 11, 2020, he and defendant Lloyd Robinson, an officer with the Lutcher Police Department, "exchanged words" as a vehicle in which Hayes was a passenger passed Robinson's parked police car.[4]  According to Hayes, later that afternoon Robinson went before a justice of the peace and falsely swore out an arrest warrant accusing Hayes of misdemeanor assault in violation

---

[1] R. Doc. 24.
[2] R. Doc. 30.
[3] R. Doc. 33.
[4] R. Doc. 21 at 3.

of La. R.S. 14:38 for supposedly threatening Robinson and others.[5] Nearly three years later, on June 4, 2023, defendant Berthelot, formerly a deputy of the St. James Parish Sheriff's Office ("SJPSO"), initiated a traffic stop on a vehicle driven by Hayes for purportedly failing to yield when crossing railroad tracks in violation of La. R.S. 32:175.[6] Hayes maintains that he did not violate the aforementioned traffic law, stopped promptly when ordered, and followed Berthelot's instructions, including exiting his vehicle.[7] Hayes claims that, when Berthelot returned to his police cruiser and learned of the outstanding July 2020 misdemeanor arrest warrant, Berthelot ordered Hayes to turn around and face the vehicle without explaining why.[8] Hayes claims that when he asked for clarification in a polite manner, Berthelot put him in an "arm bar," applying sufficient force to break Hayes's arm.[9] Hayes further alleges that the St. James Parish district attorney's office declined to prosecute him for the supposed 2020 assault on Robinson and that he was acquitted of the 2023 traffic violation.[10]

Hayes filed this suit against Berthelot, Robinson, St. James Parish Sheriff Louis, in his official capacity, and St. James Parish, as well as Rickey Babin, in his official capacity as district attorney for the 23rd Judicial District, State of Louisiana, and in his alleged capacity as custodian of records for the district, and Tyler Cavalier, also in his alleged capacity as records custodian of the district (together "the DA Defendants").[11] Hayes alleges federal and state malicious prosecution claims against Robinson and Berthelot.[12] He also alleges against Berthelot federal claims for unreasonable seizure and excessive force and a state-law tort claim for "unlawful

---

[5] *Id.*
[6] *Id.* at 4.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at 5-8.
[11] *Id.* at 1-17.
[12] *Id.* at 3-5, 12-13.

2

method of arrest pursuant to warrant" in violation of article I, section 13 of the Louisiana Constitution and article 217 of the Louisiana Code of Criminal Procedure.[13] As to Sheriff Louis and St. James Parish, Hayes alleges that they are liable to him for Berthelot's unconstitutional actions pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[14] Finally, with respect to the DA Defendants, Hayes alleges that they violated the Louisiana Public Records Act, La. R.S 44:1 *et seq.*, by improperly destroying records related to the 2020 arrest warrant.[15]

## II.     PENDING MOTION

Sheriff Louis moves to dismiss the official-capacity claims against him (counts VIII, IX, and X) that seek to hold the SJPSO liable for Berthelot's alleged constitutional violations of malicious prosecution, unreasonable seizure, and excessive force.[16] He argues that Hayes fails to allege sufficient facts showing that an official policy of the SJPSO was the moving force behind Berthelot's alleged constitutional violations.[17] According to Sheriff Louis, Hayes appears to suggest that there was a widespread practice at the SJPSO of encouraging deputies to provide false testimony, use excessive force, and conduct unreasonable seizures simply by alleging that Sheriff Louis's predecessor "ratified" Berthelot's actions. But, continues Sheriff Louis, to suggest this, Hayes relies on previous bad acts by Berthelot that are unrelated to and dissimilar from the present claims of misconduct, and he does not allege any incidents involving other SJPSO personnel that would evidence a policy amounting to the moving force behind the alleged constitutional violations.[18] In other words, Hayes does not allege sufficiently numerous prior, similar incidents as would establish a pattern or practice of providing false testimony, using excessive force, or

---

[13] *Id.* at 4-5, 14-15.
[14] *Id.* at 8-12, 15-16.
[15] *Id.* at 6-7, 16.
[16] R. Doc. 24.
[17] R. Doc. 24-1 at 2-11.
[18] *Id.* at 7-9.

3

conducting unreasonable seizures.[19] Sheriff Louis further argues that Hayes fails to allege sufficient facts to support a failure-to-train or -discipline claim because he does not allege a pattern of similar constitutional violations by untrained or undisciplined employees, much less the requisite deliberate indifference in regard to their training or discipline.[20] Berthelot argues that the state-law claim against him for "unlawful method of arrest pursuant to warrant" (count VII) should be dismissed because: (1) Hayes does not (and cannot) affirmatively allege that he was not told about the warrant during the course of his arrest; (2) article 217 of the Louisiana Code of Criminal Procedure does not apply since Berthelot was not executing a warrant when he first encountered Hayes, but was instead conducting a traffic stop; and (3) Berthelot is entitled to immunity under La. R.S. 9:2793.11 for his discretionary act of arresting Hayes.[21]

In opposition, Hayes argues that Sheriff Louis ignores the allegations of Berthelot's prior incidents of misconduct for which he was allegedly not disciplined.[22] Hayes also contends that the ratification theory for his *Monell* claims is supported by the allegations that the prior sheriff ratified Berthelot's allegedly unconstitutional actions against Hayes when he failed to discipline Berthelot.[23] Further, Hayes argues that his complaint alleges facts demonstrating that the sheriff's failure to train Berthelot was the moving force behind the constitutional violations due to Berthelot's history of abusing his position to break the law, making false claims against arrestees, and celebrating police violence in his social media accounts.[24] Finally, Hayes argues that count VII against Berthelot should not be dismissed because he alleges that Berthelot did not tell him why he was being arrested during the incident.[25]

---

[19] *Id.*
[20] *Id.* at 9-11.
[21] *Id.* at 12-15.
[22] R. Doc. 30 at 1-2.
[23] *Id.* at 2-4.
[24] *Id.* at 4-5.
[25] *Id.* at 5-6.

4

Sheriff Louis and Berthelot reply, reurging their prior arguments.[26] Sheriff Louis also argues that Hayes's allegations do not state a *Monell* claim under the ratification theory, which he says, applies only in extreme factual situations that are not present here.[27] Sheriff Louis further contends that Hayes's failure-to-train or -discipline claim should be dismissed because he fails to allege how the training program was deficient, that there was a preexisting pattern of bad acts committed by other employees similar to those alleged in this case, or that there was deliberate indifference on the part of the sheriff with respect to training or discipline.[28] Finally, Berthelot points out that the operative complaint alleges only that he did not tell Hayes about the warrant *before* breaking his arm, not that he never told Hayes about the basis for his arrest at any point during his arrest, meaning, according to Berthelot, that Hayes fails to state a claim against him for "unlawful method of arrest pursuant to warrant."[29]

### III. LAW & ANALYSIS

#### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements

---

[26] R. Doc. 33.
[27] *Id.* at 2-5.
[28] *Id.* at 5-6.
[29] *Id.* at 6.

of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's

6

likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)). A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

### B. Official-Capacity Claims Against Sheriff Louis (Counts VIII, IX, and X)

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The statute is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999). To pursue a claim under § 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Sw. Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 260 (5th Cir. 2008); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

**1. Hayes fails to plead sufficient facts to support his claim that Sheriff Louis had an unconstitutional policy or custom that was the moving force behind his alleged injuries.**

Section 1983 claims can be brought against a public official in his or her individual or official capacity. *Hafer v. Melo*, 502 U.S. 21, 23 (1991). The governmental entity that the official serves is the real party in interest in an official-capacity suit, and such claims are analyzed under the *Monell* doctrine. *Id.* at 25. In *Monell*, the Supreme Court held that a governmental entity is

liable under § 1983 only when the entity itself caused the constitutional violation at issue. 436 U.S. at 694. To succeed on an official-capacity claim under *Monell* (*i.e.*, the claim against the governmental entity), the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quotation omitted). "A municipality cannot be held liable under a theory of *respondeat superior*." *York v. Welch*, 2024 WL 775179, at *2 (5th Cir. Feb. 26, 2024) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988)). Thus, "[i]t is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (quotation and alterations omitted).

"At the motion-to-dismiss stage, a plaintiff need not allege the specific identity of the policymaker, but must allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Benfer v. City of Baytown*, 120 F.4th 1272, 1285-86 (5th Cir. 2024) (quotations omitted). An official policy "incudes a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *York*, 2024 WL 775179, at *3 (quotation and alteration omitted). And, for *Monell* liability, "an official policy may also be a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy and practically ha[s] the force of law." *Id.* (quotation and alteration omitted). To prove the existence of a custom, a plaintiff must show "a pattern of abuses that transcends the error made in a single

case." *Benfer*, 120 F.4th at 1286 (quotation omitted). "A successful showing of such a pattern requires similarity and specificity; prior incidents cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Id.* (quotation omitted). The pattern of similar and specific acts also "must be comprised of sufficiently numerous prior incidents rather than merely isolated instances." *Id.* (quotation omitted). Indeed, "'[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for [*Monell*] liability.'" *Skyy v. City of Arlington*, 712 F. App'x 396, 400 (5th Cir. 2017) (quoting *Piotrowski v. City of Hous.,* 237 F.3d 567, 581 (5th Cir. 2001)). Considering all these requirements, "[s]howing a pervasive pattern is a heavy burden." *Benfer*, 120 F.4th at 1286 (quotation omitted).

Moreover, the official policy or custom "must be either unconstitutional or adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Blanchard-Daigle v. Geers*, 802 F. App'x 113, 116 (5th Cir. 2020) (quotation omitted). Deliberate indifference is established by showing "a pattern of similar violations arising from a policy so clearly inadequate as to be obviously likely to result in a constitutional violation." *Covington v. City of Madisonville*, 812 F. App'x 219, 225 (5th Cir. 2020) (quotation omitted). However, the Fifth Circuit has recognized a narrow "single incident" exception to the pattern requirement that allows deliberate indifference to be based on a single incident when "it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy." *Id.* (quotation omitted). "Mere negligence, even gross negligence, is not sufficient to establish deliberate indifference." *Id.* (citation omitted).

The "moving force" element of *Monell* liability requires a plaintiff to "show that the municipal action was taken with the requisite degree of culpability and demonstrate a direct causal

9

link between the municipal action and the deprivation of federal rights." *York*, 2024 WL 775179, at *3 (quotation and alteration omitted). Causation in this context "requires proximate causation." *Id.* When a plaintiff claims that a municipality caused an employee to inflict an injury, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (quotation omitted). Accordingly, to survive a motion to dismiss, "a complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Id.* (quotation and alteration omitted). Importantly, "[t]he causal link 'moving force' requirement and the degree of culpability 'deliberate indifference' requirement must not be diluted, for where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondent superior liability." *Covington*, 812 F. App'x at 225-26 (quotation omitted).

       Here, Hayes fails to allege a policy or custom that was the moving force behind Berthelot's alleged constitutional violations. Hayes cites no officially adopted policy. Instead, he attempts to allege a custom amounting to a policy based on Berthelot's prior "bad acts," including: (1) a February 2021 incident when Berthelot allegedly committed criminal trespass and violated traffic laws for which he was not arrested, charged, or otherwise disciplined by the SJPSO; (2) a June 2021 incident when Berthelot allegedly falsely accused an arrestee of a felony drug charge for which Berthelot was not disciplined by the SJPSO; (3) an April 2023 incident where Berthelot lied about the circumstances surrounding a traffic stop for which he was disciplined with a one-day suspension; (4) a September 2023 incident when Berthelot allegedly acted unprofessionally by traveling on the shoulder of a road to film for TikTok wheelies and other reckless acts being performed by miniature motorcycles – an incident for which Berthelot was not criminally charged;

(5) the SJPSO finding racially insensitive material on Berthelot's TikTok account; and (6) a September 2023 incident when Berthelot allegedly ignored a direct order to abandon a dangerous high-speed pursuit.[30]

These incidents, while involving the same officer, do not satisfy the *Twombly* standard for pleading *Monell* liability because they do not evidence a custom so pervasive as to amount to an official policy. These incidents are neither similar as to constitute anything other than isolated acts, nor common, persistent, or widespread as to constitute a pattern of conduct. Except for the one instance where Berthelot was said to have made false statements concerning a traffic stop, there is no showing of the required similarity of these incidents to the violations alleged here of excessive force and unreasonable seizure. Moreover, a single instance of an officer making false statements does not a pervasive pattern make for the purposes of *Monell* liability. To be sure, the Fifth Circuit has held that twenty-seven complaints of excessive force over a span of four years was insufficient to show a custom where the plaintiff failed to allege the facts behind those complaints, including the size of the police department, or how many arrests it had made during the relevant period. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009). More recently, the Fifth Circuit, citing *Peterson*, also found that thirty complaints of excessive force in a ten-year period were insufficient to establish a custom. *See York*, 2024 WL 775179, at *4-5; *see also Martinez v. City of Rosenberg*, 123 F.4th 285, 289 (5th Cir. 2024) (affirming dismissal of *Monell* claim when complaint lacked factual context and supporting details, such as dates, officers involved, and injuries received, of incidents supposedly constituting a pattern of excessive force). Thus, the single prior instance of Berthelot making false statements cannot constitute a pattern. Further, the single-incident exception to the pattern requirement does not

---

[30] R. Doc. 21 at 8-10.

apply because there are no facts alleged showing that it should have been apparent to the policymaker that a constitutional violation was a highly predictable consequence of a particular policy related to the conduct sued upon. In this way, Hayes has not pleaded facts sufficient to demonstrate that Berthelot's alleged prior behavior was a "moving force" behind the alleged constitutional violations. At most, Hayes is seeking to hold Sheriff Louis responsible in his official capacity for the acts of an employee (Berthelot) – essentially, a theory of *respondeat superior*, which is not countenanced by the Fifth Circuit.

> **2. Hayes fails to plead sufficient facts to support his claim that Sheriff Louis failed to discipline Berthelot.**

"Plausibly to plead a *Monell* claim in the context of a failure-to-discipline claim, plaintiffs must show (1) that the city's failure to discipline amounted to deliberate indifference and (2) a causal link between the failure to discipline and the violation of their rights." *Verastique v. City of Dall.*, 106 F.4th 427, 432 (5th Cir. 2024). "So, to survive dismissal, plaintiffs must cite sufficiently numerous prior incidents, each of which includes specific facts that are sufficiently similar to those alleged here." *Id.*

Hayes fails to meet this standard. He alleges six prior acts by Berthelot, only one of which (involving false statements) is even tenuously related to the constitutional violations alleged in this suit. And Berthelot was disciplined for that act. The alleged prior acts are not limited to a single context or means of conduct. As discussed above, there is no showing of the required similarity of the other incidents involving Berthelot to the violations alleged here of excessive force and unreasonable seizure. Again, one similar complaint (even assuming adequate similarity, which is doubtful) is utterly insufficient to show deliberate indifference. *See id.* (holding that allegation of nineteen incidents of prior misconduct was insufficient to state a failure-to-discipline claim where

there was no showing of the required similarity and specificity concerning the violations in question). Thus, Hayes's failure-to-discipline claim must be dismissed.

### 3. Hayes fails to plead sufficient facts to support his claim that Sheriff Louis failed to train Berthelot.

A municipality's failure to train its police officers can give rise to § 1983 liability if the failure to train directly causes injury. *Benfer*, 120 F.4th at 1286; *Blanchard-Daigle*, 802 F. App'x at 117. "The fact that an officer could be 'unsatisfactorily trained' is not enough to trigger the municipality's liability." *Blanchard-Daigle*, 802 F. App'x at 117. To prevail on such a claim, "the plaintiff must show (1) the [municipality] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to plaintiff's constitutional rights." *Benfer*, 120 F.4th at 1286-87 (quotation omitted). Deliberate indifference in the failure-to-train context usually requires the plaintiff "to show that the municipality had actual or constructive notice of a pattern of similar constitutional violations caused by the policy." *Blanchard-Daigle*, 802 F. App'x at 117 (citing *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011)). But there is a single-incident exception whereby "deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy." *York*, 2024 WL 775179, at *5 (quotation omitted). The Fifth Circuit has explained, however, "that the single-incident exception is generally reserved for those cases in which the government actor was provided no training whatsoever." *Id.* (quotation and alteration omitted). Moreover, to state "an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." *Benfer*, 120 F.4th at 1287 (quotation omitted).

Hayes has not sufficiently alleged an inadequate training claim. His complaint states in a conclusory fashion that Sheriff Louis was "deliberately indifferent to the likelihood of further constitutional violations being committed based on the Parish's failure-to-train and failure-to-discipline Deputy Berthelot despite repeated on-the-job violations of the law (including falsification of police reports regarding alleged traffic violations)."[31] Hayes fails to identify a specific training program or point out its deficiencies. In *Benfer*, the Fifth Circuit affirmed the dismissal of the plaintiff's failure-to-train claim where the complaint lacked these specifics. *Id.*; *see also Martinez*, 123 F.4th at 289 (affirming dismissal of a failure-to-train claim where plaintiff failed to detail the training received – or lack thereof – or explain how it contributed to the "widespread practice" of excessive force). In sum, Hayes fails to adequately allege a failure-to-train claim.

4. **Hayes fails to plead sufficient facts to support his claim that Sheriff Louis ratified Berthelot's conduct.**

"Ratification provides another way of holding a [municipality] liable under § 1983." *Benfer*, 120 F.4th at 1287 (quotation omitted). "Ratification in this context requires that a policymaker knowingly approve a subordinate's actions and the improper basis for those actions." *Covington*, 812 F. App'x at 228. "Otherwise, unless conduct is 'manifestly indefensible,' a policymaker's mistaken defense of a subordinate who is later found to have broken the law is not ratification chargeable to the municipality." *Id.* (citation omitted).

Hayes's complaint alleges that Sheriff Louis's predecessor "ratified" Berthelot's actions with respect to the June 2023 traffic stop by clearing him of any wrongdoing and finding that he acted consistent with SJPSO policy.[32] These allegations are factually insufficient to establish that

---

[31] R. Doc. 21 at 15-16.
[32] *Id.* at 10-12, 15-16.

a SJPSO policymaker approved Berthelot's actions and the basis for those actions. *See Benfer*, 120 F.4th at 1287 (holding that allegation that the policymaker failed to discipline or retrain the officer was insufficient to allege ratification); *see also York*, 2024 WL 775179, at *6-7 (holding that allegations of failure to discipline an officer for use of excessive force did not constitute ratification). Indeed, the Fifth Circuit "has curtailed the applicability of a ratification theory" to "extreme factual situations," which specifically do not include a police chief's post-investigation determination that the offending officer's conduct complied with departmental policies. *York*, 2024 WL 775179, at *6 (citing *Peterson*, 588 F.3d at 848). "Whether a case presents an extreme factual situation … such that a theory of ratification applies is a question of law." *Id.* This case does not satisfy this steep threshold. *Contra Covington*, 812 F. App'x at 228-29 (holding that plaintiff presented a cognizable ratification theory by alleging the extreme factual circumstances of a police chief knowing of the officer's plan to plant drugs on his ex-wife, failing to stop him, and then covering up the incident). Accordingly, Hayes's ratification claim must be dismissed.

### C. State-Law Claim Against Berthelot (Count VII)

In count VII of his complaint, Hayes attempts to assert a claim against Berthelot for "unlawful method of arrest pursuant to warrant," citing (1) article 2315 of the Louisiana Civil Code, which pertains to negligence, (2) article I, section 13 of the Louisiana Constitution, which states that detainees must be fully advised of the reason for an arrest, and (3) article 217 of the Louisiana Code of Criminal Procedure, which generally requires an officer to inform an arrestee of a warrant, unless there are exigent circumstances.[33] Essentially, Hayes is attempting to allege a civil law tort based on alleged violations of criminal procedural. This attempt is unsuccessful.

Article I, section 13 of the Louisiana Constitution states in pertinent part:

---

[33] *Id.* at 14-15.

15

> When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self-incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel.

This provision incorporated into the Louisiana Constitution "the right of an accused to be given the warnings required by *Miranda v. Arizona*." *State v. Welch*, 337 So. 2d 1114, 1118 (La. 1976). The Fifth Circuit has explained that the reading of a *Miranda* warning is a procedural safeguard that does not give rise to a civil cause of action. *Hernandez v. Metro. Transit Auth.*, 226 F.3d 643, at *1 (5th Cir. 2000).

Similarly, article 217 of the Louisiana Code of Criminal Procedure provides:

> A peace officer, when making an arrest by virtue of a warrant, shall inform the person to be arrested of his authority and of the fact that a warrant has been issued for his arrest, unless he flees or forcibly resists before the officer has an opportunity to inform him, or unless the giving of such information would imperil the arrest. The officer need not have the warrant in his possession at the time of the arrest, but after the arrest, if the person arrested so requests, the warrant shall be shown to him as soon as practicable.

This too is a procedural safeguard that does not give rise to a civil cause of action. As the Louisiana supreme court explained long ago, "[a] statute relating to criminal procedure is a law, but not substantive law" as "creates duties, rights, and obligations" or "announces rewards and punishments." *State v. Elmore*, 155 So. 896, 897-98 (La. 1934).

In sum, neither of these Louisiana provisions creates a civil law tort cause of action.[34] Thus, Hayes cannot state a claim under these provisions, and any attempt to do so must be dismissed with prejudice.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

---

[34] Nor does an allegation that officials have failed to follow the provisions of a state procedural law state a cause of action under § 1983. *See, e.g.*, *Marshall v. Lynn*, 3 F.3d 440 (5th Cir. 1993).

IT IS ORDERED that the motion to dismiss the official-capacity claims brought against Sheriff Louis (counts VIII, IX, and X) is GRANTED, and those claims are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that the motion to dismiss the state-law claim for "unlawful method of arrest pursuant to warrant" brought against Berthelot (count VII) is GRANTED, and that claim is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 28th day of January, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE